UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-60220-Cr-Hurley/Vitunac (s)

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

VAL M. NORTHCUTT,
and FRANCESCO SCAGLIA,

        Defendants.
_____/



FILED by ___ D.C.
JAN 0 2 2007
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT & RECOMMENDATION

THIS CAUSE is before the Court on general Order of Reference from United States District Judge Daniel T.K. Hurley for disposition of all pending pretrial criminal motions. Pending before the Court is the Defendant Val M. Nothcutt's Motion to Dismiss the Indictment for Vagueness (DE 120), Motion to Dismiss the Indictment on Grounds of Duplicity (DE 122) and Motion to Strike Prejudicial Surplusage from the Indictment (DE 123), all filed November 5, 2007. The Government filed a Consolidated Opposition (DE 129) on November 20, 2007. This matter is now ripe for review.

### Defendants' Motion

The Defendant has filed three motions attacking various aspects of the single-count indictment alleging a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. First, the Defendant contends that the indictment is defective for vagueness because the charging language is replete with generalities and fails to provide enough factual detail to validly

assert that an agreement was made. Second, the Defendant argues that the indictment filed against him is fatally flawed because it is duplicitous, specifically, that the single count indictment potentially describes not one but multiple conspiracies, combining the acts of different defendants and co-conspirators which are clearly separate and unrelated, and failing to differentiate between actions within and outside of the United States. Third, the Defendant argues that the Court should enter an order striking "irrelevant and prejudicial surplusage" from the indictment.

## The Government's Response

The Government maintains that the Court should deny Defendant's Motions to dismiss the indictment (or to strike portions thereof) because, as drafted, the indictment is neither vague, nor duplicitous, nor does it contain surplusage. Rather, the Government claims, the indictment is not vague, as it provides the Defendant notice of the offense by both (1) tracking the language of the statute and (2) providing additional facts and circumstances regarding the offense. The Government asserts that the indictment is not duplicitous because, although the charged conspiracy affected a number of different purchase orders for marine hose, and included a number of conspirators working at different marine hose manufacturers, there was only one conspiracy - the one alleged in the indictment. Further, in response to the Defendant's surplusage argument, the Government contends that the Defendant has not met the exacting standard governing motions to strike with respect to any of the four paragraphs of the indictment to which he objects.

## Discussion

In his Motion to Dismiss the Indictment for Vagueness (DE 120), the Defendant contends that the indictment is defective for vagueness because the charging language is replete with generalities and fails to provide enough factual detail to validly assert that an agreement was made. A court must apply a common sense construction when examining the validity of an indictment, testing not whether the indictment could have been drafted with more clarity, but whether it conforms to minimal constitutional standards. U.S. v. Poirier, 321 F.3d 1024, 1029 (11th Cir. 2003). The indictment must contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c). The Defendant's reliance on Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (U.S. 2007), Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 2007 WL 3071637 (2nd Cir. October 23, 2007), and other civil antitrust cases, including several civil "rule of reason" analysis cases, for the relevant pleading standards is unavailing, as those cases are inapposite to the established legal standard required to sufficiently plead an indictment and do not even touch on determining whether a criminal indictment is unconstitutionally vague. Rather, it is well settled that an indictment is sufficient if it (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense. U.S. v. Woodruff, 296 F.3d 1041, 1046 (11th Cir. 2002) (citations omitted). Additionally, with regard to determining the sufficiency of an indictment, "[i]f an indictment specifically refers to the statute on which the charge was based, the reference to the statutory language adequately informs the defendant of the charge." U.S. v. Fern,

3

155 F.3d 1318, 1325 (11th Cir. 1998) (citing United States v. Stefan, 784 F.2d 1093, 1101-02 (11th Cir.), cert. denied, 479 U.S. 855 and cert. denied, 479 U.S. 1009 (1986)). An indictment that tracks the language of the relevant statute is sufficient, as long as it also provides a statement of facts and circumstances that give notice of the offense to the accused. U.S. v. Walker, 490 F.3d 1282, 1296 (11th Cir. 2007).

The instant indictment meets the minimal pleading requirements set forth by the Eleventh Circuit in Fern and Walker. Specifically, the indictment both "tracks the language of the relevant statute" and "provides a statement of facts and circumstances that give notice of the offense to the accused." See Walker, 490 F.3d at 1296. The one-count indictment charges the Defendant with a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The Sherman Act states, in relevant part, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony."

Paragraphs 2 and 3 of the instant indictment allege that the Defendant conspired with others to suppress and eliminate competition for sales of marine hose in the United States and elsewhere by rigging bids, fixing prices, and allocating market shares "from at least as early as 2000 until as late as May 2007." Paragraph 5 of the indictment, "Means and Methods of the Conspiracy," provides the Defendant with a factual recitation of the circumstances under which the offense was committed. Specifically, Paragraph 5 states, as follows:

> 5.  For the purpose of forming and carrying out the charged combination and conspiracy, the defendants, VAL. M. NORTHCUTT and FRANCESCO SCAGLIA, and co-conspirators did those things that they combined and

4

conspired to do, including, among other things:

(a) attended meetings or otherwise engaged in discussions in the United States and elsewhere by telephone, facsimile and electronic mail regarding the sale of marine hose;
(b) agreed during those meetings and discussions to allocate shares of the marine hose market among conspirators;
(c) agreed during those meetings and discussions to a price list for marine hose in order to implement and monitor the conspiracy;
(d) agreed during those meetings and discussions not to compete for one another's customers either by not submitting prices or bids to certain customers or by submitting intentionally high prices or bids to certain customers;
(e) submitted bids in accordance with the agreements reached;
(f) provided information received from customers in the United States and elsewhere about upcoming marine hose jobs to a co-coconspirator who was not an employee of any of the marine hose manufacturers, but served as the coordinator of the conspiracy and acted as a clearinghouse for information to be shared among the conspirators;
(g) received marine hose prices for customers in the United States and elsewhere from the co-conspirator coordinator of the conspiracy;
(h) sold marine hose to customers in the United States and elsewhere at collusive and noncompetitive prices pursuant to the agreements reached;
(i) accepted payment for marine hose sold in the United States and elsewhere at collusive and noncompetitive prices;
(j) authorized or consented to the participation of subordinate employees in the conspiracy; and
(k) concealed the conspiracy and conspiratorial contacts through various means, including code names and private e-mail accounts and telephone numbers. In addition, defendant VAL M. NORTHCUTT made false statements to a federal law enforcement agent when questioned about his role and the role of others employed at his firm in carrying out the conspiracy.

Such specificity of the circumstances under which the alleged antitrust conspiracy offense was committed is more than sufficient to adequately inform the Defendant of the charge and give notice of the offense to the accused. See Fern, 155 F.3d at 1325 and Walker, 490 F.3d at 1296.

The Defendant also claims that the Government failed to allege in the indictment the jurisdictional element of the Sherman Act because it "provides no specifics" of the

5

effect of the alleged conspiracy on interstate commerce. This jurisdictional element of the indictment can be plead under "either of the following two theories: (1) the offending activities took place in the flow of interstate commerce (flow theory); or (2) the defendants' general business activities had or were likely to have a substantial effect on interstate commerce (effects theory)." U.S. v. Giordano, 261 F.3d 1134, 1138 (11th Cir. 2001) (citing United States v. Fitapelli, 786 F.2d 1461, 1462 (11th Cir.1986); see also U.S. v. Nippon Paper Industries Co., Ltd., 109 F.3d 1 (1st Cir. 1997) (Activities committed abroad which have substantial and intended effect within United States may form basis for criminal prosecution under Section One of Sherman Act).

The instant indictment states, in pertinent part, that "the conspirator firms shipped marine hose in a continuous and uninterrupted flow of interstate and foreign commerce to companies located in states and countries outside the place of origin of the shipments" (¶ 9) and "the business activities of the defendants, VAL M. NORTHCUTT and FRANCESCO SCAGLIA, and their co-conspirators in connection with the manufacture and/or sale of marine hose that are the subject of this Indictment were within the flow of, and substantially affected, interstate and foreign trade and commerce." (¶ 10). In Giordano, the Eleventh Circuit examined the nearly identical indictment language and determined that both the flow theory and the effects theory were properly pled. Specifically, the indictment language at issue in Giordano stated: "The business activities of the defendants and co-conspirators that are the subject of this Indictment were within the flow of, and substantially affected, interstate and foreign trade and commerce." 261 F.3d at 1138. Analyzing this language, which is practically identical to the language pled in Paragraph 10 of the instant indictment, the Eleventh Circuit stated,

> By stating that the business activities "that are the subject of this Indictment

6

>were within the flow of, and substantially affected, interstate and foreign trade and commerce," the indictment sufficiently alleged jurisdiction under both the flow theory and the effects theory. The phrase "the business activities ... that are the subject of" the indictment refers to the specific anti-competitive conduct challenged in the indictment, not merely to Appellants' general business activities.

Id. at 1138-39. Thus, under Eleventh Circuit precedent, the jurisdictional language pled in the instant indictment is constitutionally sufficient.

Next, the Defendant argues that the indictment fails to properly plead that an illegal conspiracy existed and that the Defendant knowingly joined that conspiracy. In U.S. v. Mobile Materials, Inc., 871 F.2d 902 (10th Cir. 1989), another bid-rigging conspiracy case, the Court held that "[f]or purposes of testing the sufficiency of the indictment, the essential elements of a conspiracy under §§ 1 & 2 of the Sherman Act are 'time, place, manner, means and effect.'" (citation omitted). Each of these elements are pled in the instant indictment. Paragraph 2 of the indictment states that the conspiracy existed "[b]eginning at least as early as 1999 and continuing until as late as May 2007." Thus, the "time" element is satisfied. Paragraph 2 also alleges that the conspiracy occurred "in Broward and Monroe Counties in the Southern District of Florida, and elsewhere." Thus, the "place" element is satisfied. The "manner and means" elements are satisfied by the subparts of Paragraph 5, quoted supra, detailing the actions of the Defendant and co-conspirators. Finally, Paragraph 2 states that the conspiracy "was in unreasonable restraint of interstate and foreign trade and commerce," Paragraph 5(h) states that the Defendants and co-conspirators "sold marine hose to customers in the United States and elsewhere at collusive and noncompetitive prices," and Paragraph 5(I), states that the Defendants and co-conspirators "accepted payments for marine hose sold in the United States and elsewhere at collusive and noncompetitive prices." Thus, the "effect" element is satisfied.

7

The Defendant's assertion that the indictment fails to allege that the Defendant knowingly joined the conspiracy also fails. "[T]he law does not compel a ritual of words." United States v. Webb, 747 F.2d 278, 285. Rather, the instant indictment is sufficient because it "'fairly import[s]' the mental state," U.S. v. De La Rosa, 911 F.2d 985 (5th Cir. 1990) by alleging that the Defendant "did enter into and engage in a combination and conspiracy to suppress and eliminate competition by rigging bids, fixing prices, and allocating market shares for sales of marine hose in the United States and elsewhere." (¶ 2).

In his Motion to Dismiss the Indictment on Grounds of Duplicity (DE 122), the Defendant argues that the indictment filed against him is fatally flawed because it is duplicitous, specifically, that the single count indictment potentially describes not one but multiple conspiracies, combining the acts of different defendants and co-conspirators which are clearly separate and unrelated, and failing to differentiate between actions within and outside of the United States. "A duplicitous indictment charges two or more separate and distinct crimes in a single count." U.S. v. Burton, 871 F.2d 1566, 1573 (11th Cir. 1989). The prejudice to a defendant charged under a duplicitous count is clear:

> A duplicitous count poses three dangers: "(1) A jury may convict a defendant without unanimously agreeing on the same offense; (2) A defendant may be prejudiced in a subsequent double jeopardy defense; and (3) A court may have difficulty determining the admissibility of evidence." United States v. Wiles, 102 F.3d 1043, 1061 (10th Cir.1996) (finding no duplicity where the indictment merely alleged multiple means or methods of committing a single offense), modified, 106 F.3d 1516 (10th Cir.1997), petition for cert. filed, 65 U.S.L.W. 3632 (U.S. Mar. 10, 1997) (No. 96-1430). Under this analysis, the key issue to be determined is what conduct constitutes a single offense.

United States v. Schlei, 122 F.3d 944, 977 (11th Cir. 1997), reh'g and suggestion for reh'g en banc denied, 132 F.3d 1462 (11th Cir. 1997), cert. denied, 118 S. Ct. 1523 (1998).

"The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for '[t]he conspiracy is the crime, and that is one, however diverse its objects.'" Braverman v. U.S., 317 U.S. 49, 54 (U.S. 1942) (citation omitted). "A single agreement to commit several crimes constitutes one conspiracy. By the same reasoning, multiple agreements to commit separate crimes constitute multiple conspiracies." U.S. v. Broce, 488 U.S. 563, 570-71 (1989). Where one broad conspiracy exists, charging multiple purposes is not improper. U.S. v. Lyons, 703 F.2d 815 (5th Cir. 1983). However, where separate conspiracies are apparent, charging same in one global count is improper. U.S. v. Elam, 678 F.2d 1234 (5th Cir. 1982).

Here, the Defendant argues in his Motion that "[t]he notion of a global over-arching conspiracy among these [marine hose] manufacturers defies logic" because the marine hose industry operates throughout the world, various manufacturers offer differing ranges of products to different customers with often different needs, and manufacturers have different market shares and compete in some markets and not in others. The Defendant alleges that the nature of the marine hose industry and the location and job responsibilities of the different alleged members of the conspiracy demand that several independent conspiracies must have existed rather than a single conspiracy. Perhaps the Defendant will be able to demonstrate the existence of multiple independent conspiracies at trial. See Elam, 678 F.2d at 1245 ("Whether a single conspiracy or multiple conspiracies existed is a question of fact for the jury to determine."). However, for present purposes, to determine whether the indictment is duplicitous, the Court must examine the language of the indictment itself. Paragraph 2 describes the conspiracy as "a combination and conspiracy to suppress and eliminate competition by rigging bids, fixing prices, and allocating market shares for sales of marine hose in the United States and elsewhere." Paragraph 3 alleges

9

that the Defendant participated in this conspiracy "from at least as early as 2000 until as late as May 2007." Paragraph 4 states that "[t]he charged combination and conspiracy consisted of a <u>continuing agreement, understanding and concert of action among the defendants . . . and co-conspirators</u>, the substantial terms of which were to rig bids, fix prices and allocate market shares for sales of marine hose in the United States and elsewhere." (emphasis added). Thus, a plain reading of the indictment makes it clear that the indictment is charging a single conspiracy. The "Means and Methods of the Conspiracy" section of the indictment, which sets forth the manner and means used to carry out the conspiracy, including the use of a co-conspirator coordinator, does not change the indictment from charging a single conspiracy to charging multiple related conspiracies. Thus, the indictment withstands Defendants' allegations of duplicity.

In his Motion to Strike Prejudicial Surplusage from the Indictment (DE 123), the Defendant argues that the Court should enter an order striking "irrelevant and prejudicial surplusage" from the indictment. Defendants argue that, pursuant to Fed. R. Crim. P. 7(d), a court may strike surplusage from an indictment to protect a defendant against prejudicial or inflammatory allegations that are neither relevant nor material to the charges. An allegation which does not affect the charge and need not be proved may be rejected as mere surplusage. <u>U.S. v. Noveck</u>, 271 U.S. 201, 203 (1926). "The inclusion of clearly unnecessary language in an indictment that could serve only to inflame the jury, confuse the issues, and blur the elements necessary for conviction under the separate counts involved surely can be prejudicial." <u>U.S. v. Bullock</u>, 451 F.2d 884, 888 (5th Cir. 1971). It is important to note that Rule 7(d) is strictly construed against striking surplusage:

> A motion to strike surplusage from an indictment should not be granted "unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial . . . [T]his is a most 'exacting standard.'" <u>United</u>

10

States v. Huppert, 917 F.2d 507, 511 (11th Cir. 1990) (quoting 1 Charles A. Wright, Federal Practice and Procedure § 127 at 424-29 (1982)). Therefore, it is proper to reserve ruling on a motion to strike surplusage until the trial court has heard evidence that will establish the relevance of the allegedly surplus language . . .

United States v. Awan, 966 F.2d 1415, 1426 (11th Cir. 1992). As such, the Court should only order words stricken from the indictment as surplusage where it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. Bullock, 451 F.2d at 888. Additionally, even when prejudice can be shown, the Court should not strike the information contained in the indictment if it is relevant to the charged offense. U.S. v. Scarpa, 913 F.2d 993, 1013 (2nd Cir. 1990).

Here, the Defendant moves the Court to strike Paragraphs 5(f), 5(g), 5(k), and 9 in their entirety. First, the Defendant argues that Paragraph 5(k) should be stricken from the indictment. This paragraph states as follows:

> 5. For the purposes of forming and carrying out the charged combination and conspiracy, the defendants, VAL M. NORTHCUTT and FRANCESCO SCAGLIA, and co-conspirators did those things that they combined and conspired to do, including, among other things:
> .
> .
> .
> (k) concealed the conspiracy and conspiratorial contacts through various means, including code names and private e-mail accounts and telephone numbers. In addition, defendant VAL M. NORTHCUTT made false statements to a federal law enforcement agent when questioned about his role and the role of others employed at his firm in carrying out the conspiracy.

While the Defendant's Motion asks that the Court strike this paragraph in its entirety, his argument addresses only the last sentence of the paragraph, which states, "In addition, defendant VAL M. NORTHCUTT made false statements to a federal law enforcement agent when questioned about his role and the role of others employed at his firm in

11

carrying out the conspiracy." The Defendant argues that this language is irrelevant to establish the government's prima facie case because the Defendant is not charged with perjury or making false statements. The Defendant also claims that the language is clearly prejudicial and inflammatory. The court faced a similar request by defendants in <u>U.S. v. Lockheed Corp.</u>, 1995 WL 17064093 (N.D. Ga. 1995), in which the defendants contended that the use of the word "code" is unduly prejudicial and loaded, especially in the context of the indictment's allegations that the defendants used code names and code references to conceal the conspiracy. <u>Id.</u> at *6. The court disagreed and denied defendants' request to strike, explaining that, in a conspiracy case:

> the methods by which the defendants concealed those payments, including use of code names or any other means, is relevant; and whether or not the defendants used code names and references in an attempt to conceal criminal activity is an evidentiary matter for the trial jury to consider. Furthermore, this Court is compelled to conclude that the defendants have failed to allege sufficient prejudice from the usage of the word "code" in the indictment.

<u>Id.</u> (citations omitted). Similarly, in this case, the language in Paragraph 5(k) of the indictment describes the methods used by the conspirators, including the Defendant, to conceal the alleged conspiracy's criminal activity, and is therefore relevant to the charge. Thus, it should not be stricken as surplusage because it is not unfairly prejudicial. <u>See</u> <u>Scarpa</u>, 913 F.2d at 1013.

The Defendant also argues that Paragraphs 5(f) and 5(g) should be stricken from the indictment. These paragraphs state as follows:

> 5. For the purposes of forming and carrying out the charged combination and conspiracy, the defendants, VAL M. NORTHCUTT and FRANCESCO SCAGLIA, and co-conspirators did those things that they combined and conspired to do, including, among other things:
> .
> .

12

    (f)    provided information received from customers in the United States and elsewhere about upcoming marine hose jobs to a co-conspirator who was not an employee of any of the marine hose manufacturers, but served as the coordinator of the conspiracy and acted as a clearinghouse for information to be shared among the conspirators;

    (g)    received marine hose prices for customers in the United States and elsewhere from the co-conspirator coordinator of the conspiracy;

The Defendant argues that these paragraphs explain the Government's "theory" and "hypothesis" of the scheme and the use of a "co-conspirator coordinator" and are therefore suitable closing argument, but are not proper for the indictment. He cites to U.S. v. Vastola, 670 F. Supp. 1244, 1255 (D. N.J. 1987), in which the Court held that anything in the indictment that allows the jury to infer involvement with uncharged crimes is improper. First, there is nothing inflammatory or prejudicial about these references to the coordinator. Moreover, these objected-to subparagraphs explain how the conspiracy operated, which is "indeed relevant to forming an understanding about the nature of this action." U.S. v. Climatemp, Inc., 482 F. Supp. 376, 391-92 (N.D. Ill. 1979), aff'd U.S. v. Reliable Sheet Metal Works, Inc., 705 F.2d 461 (7th Cir. 1983). Thus, Paragraphs 5(f) and 5(g) should not be stricken from the indictment.

Finally, the Defendant argues that Paragraph 9 should be stricken from the indictment. This paragraph states as follows:

    9.    Marine hose is a flexible rubber hose used to transfer oil between tankers and storage facilities and/or buoys. During the period covered by this Indictment, the conspirator firms shipped marine hose in a continuous and uninterrupted flow of interstate and foreign commerce to companies located in states and countries outside the place of origin of the shipments. In addition, substantial quantities of related equipment, as well as payments for marine hose, traveled in interstate and foreign commerce. The victims of this conspiracy included companies in the off-shore extraction and/or transportation

of petroleum products and the United States Department of Defense.

While the Defendant's Motion asks that the Court strike this paragraph in its entirety, his argument addresses only the last sentence of the paragraph, which names the United States Department of Defense as a victim of the conspiracy. The Defendant argues that this language "implies that the victims of the conspiracy include soldiers in Iraq." He claims that the language is irrelevant for the purposes of the indictment and was merely included to incite prejudice and garner sympathy from the jury. However, as the Government points out, the identification of the United States Department of Defense as one of the victims of the conspiracy to suppress and eliminate competition in the marine hose industry is a pertinent factual element of the indictment, as it shows that the conspiracy affected domestic interstate commerce. As the Defendant argued in his motion to dismiss on vagueness grounds, one jurisdictional theory for a criminal antitrust case is that the defendants' general business activities had or were likely to have a substantial effect on interstate commerce (effects theory). U.S. v. Giordano, 261 F.3d at 1138. The challenged language of Paragraph 9 of the indictment is therefore relevant to the charge and should not be stricken as surplusage under the "exacting standard" dictated by the Eleventh Circuit in Awan, 966 F.2d at 1426, which instructs the Court to deny a motion to strike surplusage from an indictment "unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." (citation omitted).

For the reasons stated above, the indictment is not defective as vague or duplicitous and the Defendant's motions to dismiss and to strike portions of the indictment for surplusage fail.

## Recommendation

For the reasons stated above, this Court recommends to the District Court that the

Defendant Val M. Nothcutt's Motion to Dismiss the Indictment for Vagueness (DE 120), Motion to Dismiss the Indictment on Grounds of Duplicity, (DE 122) and Motion to Strike Prejudicial Surplusage from the Indictment (DE 123), all filed November 5, 2007, be DENIED.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States District Judge Daniel T. K. Hurley, within ten (10) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C). Failure to file timely objections may limit the scope of appellate review of factual findings contained herein. See United States v. Warren, 687 F.2d 347, 348 (11th Cir. 1982) cert. denied, 460 U.S. 1087 (1983).

DONE and SUBMITTED in Chambers at West Palm Beach in the Southern District of Florida, this ____ day of December, 2007.

ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE

Copies to:
Honorable Daniel T.K. Hurley
All Counsel of Record